UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

U.S. DISTRICT COURT
EASTERN DISTRICT
FILED

2013 JUL -2 P 1: 25

JON W. SANFILIPPO
CLERK

UNITED STATES OF AMERICA,

    Plaintiff,

v.      Case No. 13-CR-58

HUA JUN ZHAO,

    Defendant.

## PLEA AGREEMENT

1.     The United States of America, by its attorneys, James L. Santelle, United States Attorney for the Eastern District of Wisconsin, and Stephen A. Ingraham, Assistant United States Attorney for the Eastern District of Wisconsin, and the defendant, Hua Jun Zhao, individually and by attorney Michelle L. Jacobs, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement.

### CHARGE

2.     In connection with this plea agreement, the defendant has been charged in an information with a violation of Title 18, United States Code, Section 1030(a)(2)(C).

3.     The defendant has read and fully understands the charge contained in the information and fully understands the nature and elements of the crime with which he has been charged. The charge and the terms and conditions of the plea agreement have been explained to him fully by his attorney.

4.     The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant voluntarily agrees to plead guilty to the offense alleged in the information which is set forth in full as follows:

### COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

*On or about February 27, 2013, in the State and Eastern District of Wisconsin,*

**HUA JUN ZHAO,**

*intentionally accessed a computer without authorization, and thereby obtained from a protected computer information of a value exceeding $5,000.*

*All in violation of Title 18, United States Code, Sections 1030(a)(2)(C), and (c)(2)(B)(iii).*

6. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense charged in the information. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits to these facts and agrees that those facts establish his guilt beyond a reasonable doubt.

In August 2011, Hua Jun Zhao was hired by MA and the Medical College of Wisconsin (MCW) as a research scientist. Zhao's work at MCW involved extensive research on the chemical C-25.

Zhao recorded the results of this research electronically, on MCW computers and external storage devices. As a way to protect and preserve the confidentiality of the information, only MA, Zhao and a research assistant were given access to the electronic information.

Zhao was aware of and understood his responsibility and obligation to guard the secrecy of the research information and not to remove or take the C-25 research data, which belonged to MCW, without MCW's authorization.

On December 27, 2012, Zhao, who is a Chinese national and lawful permanent resident of the United States, took an unpaid leave of absence from MCW to return to China where his wife and children reside. Although it was initially scheduled as a two-week trip, Zhao emailed MA to notify him that he was delaying his return. Zhao returned to the United States on February 19, 2013.

On February 22, 2013, Zhao was summoned to a meeting with MA and MCW officials because of his lengthy absence. They set a schedule for Zhao to finish his first author manuscript about C-25 before March 15, 2013. Sometime that same day, MA misplaced three pill-bottle sized containers of C-25. On February 25, 2013, MCW officials sent an email to MCW employees reporting that MA had misplaced the bottles of C-25, indicating that MA believed he had left it in a conference room.

MCW security began to investigate the missing compound. MCW officials reviewed security camera video surveillance from February 22nd, and observed that Zhao had entered MA's office that afternoon. MCW officials began to suspect that Zhao may have taken the C-25.

In the late afternoon of February 27, 2013, MCW officials confronted Zhao about the missing compound. Zhao acknowledged going into MA's office, which he did regularly, but denied taking the compound. Nonetheless, MCW suspended Zhao and revoked his access privileges to the MCW facility and labs. MCW also took possession of paperwork, an external

hard drive, a thumb drive, and a personal lap top computer, all of which Zhao had in his possession at the time.

Approximately two hours later, Zhao came back to MCW and gained unauthorized access to the lab area where he typically worked. Using his computer terminal and password, at 7:09 p.m., Zhao logged onto the MCW server. Electronic records show that his login and password were used on another computer at the lab at 8:52 p.m.

A later forensic examination of the MCW server showed that sometime between 1:00 a.m. on February 27, 2013 and 1:00 a.m. on February 28, 2013, a large amount of electronic information was deleted from Zhao's user directory, specifically a file called, "Marshall Lab Data," which had contained the C-25 research. All of the data was eventually able to be restored, and thus nothing was lost. Subsequent analysis of electronic data showed that a flash drive found in Zhao's possession at the time of his arrest on March 29, 2013 was connected to the MCW server during the evening hours when Zhao was present at MCW without authorization. The flash drive contained a file called "Marshall Lab Data." This was a different flash drive than the one retained by MCW officials earlier on February 27, 2013.

On March 1, 2013, Zhao was summoned to MCW, and was met by MCW personnel and the FBI. They reviewed the material on Zhao's laptop and thumb drive which had been taken from him on February 27 and found the thumb drive and laptop did not contain any C-25 research. Zhao had used the external hard drive regularly to conduct and organize his C-25 research, and MCW officials thus found numerous research files relating to the C-25 research on the external hard drive. MCW officials required that the external hard drive be wiped clean of all

C-25 research data to protect its confidentiality before returning these devices to Zhao along with his laptop.

On March 15, 2013, MCW sent a certified letter to Zhao terminating his employment.

On March 28, 2013, after agents discovered that Zhao had an airline ticket for China booked for April 2, 2013, they executed a search warrant at his apartment in Milwaukee and seized among other items Zhao's personal laptop, which had been examined at MCW on March 1 and found to contain no MCW research data. A subsequent examination revealed that on March 21, 2013, a substantial quantity of post-June 2012 MCW research and information relating to C-25 had been copied onto the personal laptop, including the "Marshall Lab Data" file, data which Zhao knew he was not to have in his possession at that time. On March 29, 2013, Zhao was arrested, and was found to be in possession of the flash drive which had been connected to MCW's server on the evening of February 27, 2013.

This information is provided for the limited purpose of setting forth a factual basis for the defendant's plea of guilty. It is not a full recitation of the defendant's knowledge of or participation in the offense.

## PENALTIES

7.  The parties understand and agree that the charge set forth in the information carries the following maximum term of imprisonment and fine: 5 years and $250,000. The offense also carries a mandatory special assessment of $100 and a maximum of three years of supervised release.

8.  The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

5

## DISMISSAL OF REMAINING COUNTS

9. The government agrees to move to dismiss the indictment at the time of sentencing.

## ELEMENTS

10. The parties understand and agree that in order to sustain the charge of unauthorized access and obtaining information from a protected computer, as set forth in the information, the government must prove each of the following propositions beyond a reasonable doubt:

   First: the defendant intentionally accessed a protected computer;

   Second: the defendant did so without authorization;

   Third: the defendant obtained information; and

   Fourth: the value of the information exceeded $5,000.

## SENTENCING PROVISIONS

11. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

12. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in the

6

information. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

14. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of defendant's criminal history.

## Sentencing Guidelines Calculations

15. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant retains his right to litigate specific points at a sentencing hearing. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

16. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating

7

the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which defendant is pleading guilty.

### Base Offense Level

17. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in the information is 6 under Sentencing Guidelines Manual § 2B1.1(a)(2).

### Specific Offense Characteristics

18. The parties agree to recommend to the sentencing court that a six-level increase for attempted loss in excess of $30,000 under Sentencing Guidelines Manual §2B1.1(b)(1)(D) is applicable to the offense level for the offense charged in the information. The parties do not anticipate that any other specific offense characteristics or Chapter Three adjustments will apply to the offense level for the offense charged in the information.

### Acceptance of Responsibility

19. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the offense level is greater than 16, and the court further determines that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to move for an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b), because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

20. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

21. Both parties reserve the right to make any recommendation regarding any matters not specifically addressed by this agreement.

22. The parties acknowledge and understand that the United States will recommend a sentence within the advisory guideline range as calculated by the sentencing court. The defendant is free to argue for any sentence he deems appropriate.

## Court's Determinations at Sentencing

23. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

9

## FINANCIAL MATTERS

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

### Special Assessment

26. The defendant agrees to pay the special assessment in the amount of $100 before or at the time of sentencing.

## DEFENDANT'S WAIVER OF RIGHTS

27. In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if

ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

  c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

  d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

  e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

28. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

29. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

11

Case 2:13-cr-00058-CNC Filed 07/02/13 Page 11 of 15 Document 31

30. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## Further Civil or Administrative Action

31. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

32. The parties understand and agree that conviction for the offense in the information may have immigration consequences under United States Immigration and Nationality Act (INA) at 8 U.S.C. § 1101(a)(43)(G). Removal and other immigration consequences are the subject of a separate proceeding, and the defendant understands that no one, including the defendant's attorney or the sentencing court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences, including the potential for automatic removal from the United States.

## GENERAL MATTERS

33. The parties acknowledge that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

34. The parties acknowledge that this plea agreement will be filed and become part of the public record in this case.

35. The parties acknowledge that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

36. The defendant understands that pursuant to the Victim and Witness Protection Act and the regulations promulgated under the Act by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

37. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a

result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

38. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

Case 2:13-cr-00058-CNC   Filed 07/02/13   Page 14 of 15   Document 31

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney, and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 06-28-2013

*Huajun Zhao*
HUA JUN ZHAO
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 6/28/2013

MICHELLE L. JACOBS
Attorney for Defendant

For the United States of America:

Date: 7/2/2013

JAMES L. SANTELLE
United States Attorney

Date: 7/2/2013

STEPHEN A. INGRAHAM
Assistant United States Attorney

15

Case 2:13-cr-00058-CNC   Filed 07/02/13   Page 15 of 15   Document 31